RECORD NO. 14-1549

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

LIBERTY MUTUAL INSURANCE COMPANY;
RIFE & HALL COAL COMPANY,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
CAROLYN JUSTUS, o/b/o and widow of Greley Justus,

*Respondents.*

APPEAL FROM AN ORDER OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

**OPENING BRIEF OF PETITIONERS**

John R. Sigmond
PENN, STUART & ESKRIDGE
804 Anderson Street
Bristol, TN 37620-2009
(423) 793-4803
jsigmond@pennstuart.com

*Counsel for Petitioners*
*Liberty Mutual Insurance Co.*
*and Rife & Hall Coal Co.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Director, OWCP

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

who is _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                      YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      YES      NO
        If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     YES     NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     YES     NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?     YES     NO
If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
(signature)                                                         (date)

11/17/2011
SCC

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
RICHMOND, VIRGINIA

| | | |
|---|---|---|
| RIFE & HALL COAL CO., | ) | |
| | ) | Case No.: 14-1549 |
| Employer, | ) | BRB No.: 13-0313-BLA and |
| | ) | 13-0314-BLA |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Insurer, | ) | |
| | ) | |
| Petitioners, | ) | |
| v. | ) | |
| | ) | |
| GRELEY JUSTUS and CAROLYN JUSTUS, WIDOW OF GRELEY JUSTUS, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Claimant, | ) | |
| and | ) | |
| | ) | |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Party-in-Interest, | ) | |
| | ) | |
| Respondents. | ) | |

PETITIONERS' BRIEF

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER JURISDICTION AND
      BASIS FOR APPELLATE REVIEW……..………………….....1

II.   STATEMENT OF THE
      ISSUES……………………………………………………………..3

       1. Did the Administrative Law Judge err as a matter of law in determining that the claimant and the deceased miner were entitled to benefits under the Federal Black Lung Benefits Act by failing to consider the miner's ailing cardiac condition in determining whether claimant proved that the miner was totally disabled due to a respiratory impairment prior to his death?

       2. Does substantial evidence support the Administrative Law Judge's finding that the miner was totally disabled due to a respiratory impairment prior to his death?

III.  STATEMENT OF THE
      CASE…………………………………………………………………4

IV.   STATEMENT OF THE
      FACTS……………………………………………..........................8

V.    SUMMARY OF
      ARGUMENT…………………………………………………...19

VI.   ARGUMENT………………………………………………...21

      A.    STANDARD OF REVIEW…………………………………..21

i

B.    DISCUSSION OF ISSUES……………………………...22

    1.  The Administrative Law Judge erred as a matter of law in determining that the claimant and the deceased miner were entitled to benefits under the Federal Black Lung Benefits Act by failing to consider the miner's ailing cardiac condition in finding that claimant proved that the miner was totally disabled due to a respiratory impairment prior to his death…………………..……………………………….25

    2.  Substantial evidence does not support the Administrative Law Judge's finding that the miner was totally disabled due to a respiratory impairment prior to his death…………………...33

VII.   CONCLUSION………………………………………………45

VIII.  CERTIFICATE OF COMPLIANCE………………………47

IX.    CERTIFICATE OF SERVICE……………………………… 48

# TABLE OF AUTHORITIES

Adkins v. Director, OWCP,
  889 F.2d 1360, 1361 (4th Cir. 1989)…………………………………………….1

Allentown Mack Sales and Serv., Inc. v. NLRB,
  522 U.S. 359, 377, 118 S. Ct. 818 (1998)……………………….……22, 33

Anderson v. Valley Camp of Utah, Inc.,
  12 BLR 1-111 (1988)…………………………………………...…………...23

Arnold v. Secretary, Health Education & Welfare,
  567 F.2d 258, 259 (4th Cir. 1977)………………………………………22, 34

Dehue Coal Co. v. Ballard,
  65 F.3d 1189 (4th Cir. 1995)…………………………………………...19, 20, 25, 31

Director, OWCP v. Greenwich Collieries,
  512 U.S. 267 (1994)…………………………………………………………….23

Harman Mining Co. v. Dir., OWCP,
  678 F.3d 305, 310 (4th Cir. 2012)…………………………………………21

Island Creek Coal Co. v. Compton,
  211 F.3d 203, 208 (4th Cir. 2000)…………………………………………21

Jewell Smokeless Coal Corporation v. Street,
  42 F.3rd 241 (4th Cir. 1994)…………………………………………………..19, 23

Lewis Coal Co. v. Dir., O.W.C.P.,
  373 F.3d 570, 575 (4th Cir. 2004)…………………………………….…..21

Milburn Colliery Co. v. Hicks,
    138 F.3d 524, (4th Cir. 1998)………………..20, 25, 26, 27, 28, 30, 31, 35
NLRB v. Columbian Enameling & Stamping Co.,
    306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939)……………21, 33

Peabody Coal Co. v. Helms,
    859 F.2d 486 (7th Cir. 1988)………………………………………………30

Piney Mountain Coal Company v. Mays,
    176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999)………….21, 33

Ramey v. Kentland Elkhorn Coal Corp.,
    755 F.2d 485 (4th Cir. 1985)………………………………………….37

Richardson v. Perales,
    402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971)………...21, 33

Shelton v. Dir., OWCP,
    899 F.2d 690, 693, (7th Cir. 1990)……………………………………..25

Smith v. Chater,
    99 F.3d 635, 637 (4th Cir. 1996)…………………………...……..21, 33

Sterling Smokeless Coal Co. v. Akers,
    131 F.3d 438, 439 (4th Cir. 1997)…………………………………..22, 23

Underwood v. Elkay Mining, Inc.,
    105 F.3d 946 (4th Cir. 1997)………………………………………...35

Walker v. Dir., OWCP,
    927 F.2d 181 (4th Cir. 1991)………………………………………24

William B. Lane v. Union Carbite Corp.,
    105 F3d 166 (4th Cir. 1997)……………………….………………24

## STATUTES

Federal Coal Mine Health and Safety Act
  30 U.S.C. § 901(a)………………………………………………1, 24
  30 U.S.C. § 932(a)……………………………………………………1

Longshore and harbor Workers' Compensation Act ("LHWCA")
33 U.S.C. § 921(c)…………………………………………………………1

Patient Protection and Affordable Care Act,
  Pub. L. No. 111-148, § 1556 (March 23, 2010)……………………6, 18

## REGULATIONS

Part 718 – Standard for determining coal workers' total disability or death due to pneumoconiosis.

  20 C.F.R. § 718.204……………………………………19, 23, 24, 34, 35, 39
  20 C.F.R. § 718.304……………………………………………………5, 23
  20 C.F.R. §718.305…………………………………………………...6, 18

Part 725 – Claims for Benefits Under Part C of Title IV of the Federal Mine Safety and Health Act

  20 C.F.R. §725.406…………………………………………..…………...11

v

## I.    STATEMENT OF SUBJECT MATTER JURISDICTION AND BASIS FOR APPELLATE REVIEW

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board").   Pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), as incorporated by the Black Lung Benefits Act, 30 U.S.C. § 932(a), "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within 60 days following the issuance of such Board order a written petition praying that the order be modified or set aside." Adkins v. Director, OWCP, 889 F.2d 1360, 1361 (4th Cir. 1989).

The Board's April 9, 2014 Decision and Order affirming Administrative Law Judge Stephen R. Henley's Order Awarding Benefits is a final order on the merits of the Respondent's claim for Federal Black Lung Benefits. Petitioners Rife & Hall Coal Company and Liberty Mutual Insurance Company filed Employer's Petition for Review in this Court on June 5, 2014, within the 60 day jurisdiction time limit to appeal a final order from the Board.   The injury alleged in this case occurred in the State of Virginia, within the United States Court of Appeals for the Fourth

1

Circuit's jurisdiction. Accordingly, this Court has jurisdiction to review the Board's decision.

## II.    STATEMENT OF THE ISSUES

1.  **THE ALJ ERRED AS A MATTER OF LAW BY FAILING TO CONSIDER THE MINER'S DOCUMENTED CARDIAC CONDITIONS IN DETERMINING WHETHER CLAIMANT ESTABLISHED THAT THE MINER WAS TOTALLY DISABLED BY A RESPIRATORY IMPAIRMENT PRIOR TO HIS DEATH.**

2.  **SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S FINDING THAT THE DECEASED MINER SUFFERED FROM A TOTALLY DISABLING RESPIRATORY OR PULMONARY IMPAIRMENT PRIOR TO HIS DEATH.**

### III.   STATEMENT OF THE CASE

This case is before the Court on a subsequent claim for benefits filed under the Federal Black Lung Benefits Act (BLBA) by the deceased miner Greley Justus (miner) on April 21, 2009, and on a claim for survivor's benefits filed by the miner, Carolyn Justus (Respondent), on July 13, 2011.[1]  Joint Appendix at 349, 461, hereafter "JA at ___."  The DOL issued a Proposed Decision and Order awarding benefits in Mr. Justus' claim on January 11, 2010, identifying Rife & Hall Coal Company as insured by Liberty Mutual Insurance Company (collectively, Petitioners) as the coal mine operator responsible for paying the miner's benefits. JA 433.  The matter was subsequently referred to the Office of Administrative Law Judges for a formal hearing. JA 452.  The miner passed away on June17, 2011, and the case was remanded to the District Director on June 30, 2011.  JA at 453, 455. Respondent filed an application for survivor's benefits on June 13, 2011.  JA at

---

1.   Mr. Justus filed previous applications for Black Lung benefits on September 24, 1986, August 17, 1989, April 2, 1999, and July 18, 2007.   His July 18, 2007 claim was denied by the DOL on February 19, 2008, on the grounds that, although the miner had established pneumoconiosis, he had failed to establish total disability due to pneumoconiosis.

461.   Relying on the January 11, 2010 Proposed Decision and Order awarding benefits in the miner's claim, the District Director awarded benefits in the survivor's claim on July 28, 2011.   JA at 468.   The Petitioners appealed both awards on August 12, 2011, and the cases were again forwarded to the Office of Administrative Law Judges for hearing.   JA at 481.

A hearing was held before Administrative Law Judge Stephen Henley (ALJ) on June 28, 2012, in Princeton, West Virginia.   JA at 71.   The ALJ issued his *Decision and Order Granting Subsequent Claim* on March 27, 2013.   JA at 43.   In his Order, the ALJ determined that Respondent had failed to establish that the miner had the condition of complicated pneumoconiosis, which would have resulted in automatic entitlement pursuant to 20 C.F.R § 718.304.   JA at 50.   However, the ALJ did find that Respondent established that the miner suffered from a totally disabling respiratory or pulmonary impairment prior to his death.   JA at 53.   In concluding that Respondent established the existence of a totally disabling respiratory impairment prior to the miner's death, the ALJ determined that the medical opinion of Dr. Forehand established total disability even though the objective testing in the record failed to establish total disability.   JA at 58.   The ALJ further found that, because the Petitioners stipulated to 20 years of coal mine

5

employment, Respondent was entitled to the rebuttable presumption of disability due to pneumoconiosis afforded to miners who worked for 15 or more years in the nations coal mines and proved the existence of a totally disabling respiratory impairment.   JA at 59-60; *see* 20 C.F.R. § 718.305.   The ALJ went on to find that the Petitioners failed to rebut the 15 year presumption and awarded benefits in the miner's claim.   JA at 66.   The ALJ further found that the Respondent was entitled to automatic benefits in the survivor's claim pursuant to § 1556(b) of the PPACA. Id.

On April 4, 2013, the Petitioners filed a timely Notice of Appeal of the ALJ's decision with the Benefits Review Board ("BRB").   JA at 37.   After accepting the Petitioner's Petition for Review and supporting brief, the BRB issued its *Decision and Order* on April 9, 2014, affirming the ALJ's award of benefits.   JA at 5.

The Petitioners filed their timely Petition for Review with this Court on June 5, 2014.   On June 9, 2014, the Fourth Circuit Court of Appeals issued an Informal Briefing Order, ordering the Petitioners to file their informal opening brief by July 3, 2014.   On June 27, 2014, Petitioners filed *Petitioner's Motion for Extension of Time to File Opening Brief and Petitioner's Request for a Formal Briefing*

6

*Schedule*.  On July 2, 2014, this Court issued a formal Briefing Order, ordering Petitioners to submit their opening brief and Appendix by August 11, 2014.

On August 1, 2014, Petitioners filed *Petitioner's Motion for a Thirty Day Extension to File Opening Brief and Appendix*.  This Court granted the Petitioners Motion, ordering the Petitioner's opening brief and appendix to be submitted by September 10, 2014.

## IV.    STATEMENT OF THE FACTS

The miner was born on August 2, 1941, and worked in the nation's coal mines from 1962 through 1989.  JA at 86, 88.  The ALJ determined that the miner had worked for 20 years in the nation's coal mines.  JA at 47.  The miner also smoked extensively, and the ALJ credited the miner with a smoking history of 52.5 pack years.  JA at 49.  The miner retired from the mines in 1989 at the instruction of his physician due to his declining cardiac health.  JA at 88.  On June 17, 2011, the miner passed away.  JA 543.  The cause of death listed on the miner's death certificate was cardio-respiratory arrest due to end stage congestive heart failure (Stage IV), black lung/pneumoconiosis, and COPD.  JA at 466.  The death certificate also cited chronic kidney disease, atrial fib, HTN, hyperlipidemia, and interstitial lung disease as other significant conditions contributing to the miner's death.  JA at 466.

The miner suffered from significant cardiac issues throughout the course of his life.  The miner first suffered a heart attack on March 17, 1983.  JA at 92, 298-304.  The miner underwent coronary bypass surgery in May of 1983, then again in May of 1992.  JA at 92, 298-304.  Dr. Hippensteel and Dr. Randolph

8

Forehand[2] each reported that the miner underwent bypass surgery in 1983 and 1992, that he had a defibrillator implanted in 2001, and that he had the defibrillator replaced in 2007.   JA at 370, 402.   The record before the ALJ contained extensive operative notes and treatment records related to the heart surgeries that the miner underwent.   JA at 298-304, 402.   The miner's Social Security Earnings records show that he did not work any from the time of his heart attack until sometime in 1985.   JA at 368-369.

After a lengthy absence from employment due to his failing cardiac health, it appears that the miner returned to work in 1985 with Rife & Hall Coal Co.   JA at 368-369.   The claimant's Social Security Earnings record shows earnings with Rife & Hall Coal Co. from 1985 until 1989.   JA at 369.   At the hearing, the miner's surviving spouse testified that he retired from the coal mines in 1989 at the instruction of his physician due to his declining cardiac health.   JA at 88.   The miner also reported to Kirk Hippensteel, M.D., who examined the miner prior to his death at the request of the Petitioners, that he stopped work in May 1989 after experiencing angina chest pain.   JA at 165.

---

2 Dr. Forehand examined the miner on behalf of the Department of Labor pursuant to 20 C.F.R. § 725.406.

After retiring, the miner continued to follow up with physicians and experienced heart trouble through the time of his death. For example, a treatment note from Bluefield Regional Medical Center dated February 12, 2002, noted severe triple vessel coronary artery disease. JA at 424. The February 12, 2002 note reported total occlusion of the left anterior descending artery and total occlusion of the right coronary artery at its mid section. JA at 425. On August 18, 2008, the miner was admitted to Bluefield Regional due to suspected acute coronary syndrome. JA at 431-432. After examining the miner on August 18, 2002, Dr. Radha Krishnan diagnosed congestive heart failure. JA 431-432.

The Miner underwent extensive objective testing in conjunction with his claim for benefits. The miner underwent Pulmonary Function Tests (PFTs) on May 6, 2009, October 20, 2009, April 22, 2010, and February 24, 2011. JA at 54. The results of each of the miners PFTs were above the disability standards set forth in Appendix B 20 C.F.R. § 718. *See* 20 C.F.R. § 718.204(b). The miner underwent arterial blood gas studies (ABGs) on May 5, 2009 and October 20, 2009. JA at 55. Only one of the two ABG studies produced results that qualified as disabling under Appendix C of 20 C.F.R. § 718.

10

The record before the ALJ also included medical reports from Drs. Forehand, Hippensteel, and Caffrey. JA at 55-58. In his medical report completed pursuant to the Department of Labor examination, Dr. Forehand reported that the miner had a history of heart disease, diabetes, emphysema and stroke, and noted under the heading Patient History that the miner had underwent multiple heart surgeries. JA at 370-371. After providing a review of the miner's social, work, and health history, Dr. Forehand diagnosed the miner with coal workers' pneumoconiosis, cigarette smoker's lung disease, and congestive heart failure. JA at 372-373. The doctor indicated that he based his diagnosis of coal workers' pneumoconiosis on the miner's work history, his shortness of breath, his chest x-ray, and his arterial blood gas study. Id. He indicated that he diagnosed cigarette smoker's lung disease based upon the miner's smoking history and ventilatory study. JA at 373. Finally, Dr. Forehand indicated that he was basing his diagnosis of congestive heart failure on the miner's chest x-ray. JA at 373.

Dr. Forehand completed his medical report using form CM-988, the standard form provided by the Department of Labor for examining medical physicians to complete in conjunction with medical exams provided pursuant to 20 C.F.R. § 725.406. JA at 370. Section d(8) of that form directs the doctor to first provide

11

his or her medical assessment, with rationale, of the degree of severity of the
miner's respiratory impairment, "particularly in terms of the extent to which the
impairment prevents the patient from performing his or her current or last coal mine
job of one (1) year's duration." JA at 373. Under this heading, Dr. Forehand
stated as follows:

> A significant respiratory impairment is present.
> Insufficient residual oxygen-transfer capacity remains to
> return to last coal mining job. Unable to work. Totally
> and permanently disabling. JA at 373.

Section d(8) of form CM-988 goes on to direct the physician to provide his
or her assessment with rationale of the extent to which the physician's diagnoses
contributes to the miner's impairment. JA at 373. Here, Dr. Forehand stated as
follows:

> Claimant's coal mine employment is the principal cause
> of abnormal arterial blood gas study. Cigarette smoking
> reduced vent study to 74% of predicted which is not
> disabling. Claimant's cardiac status appears stable. JA
> at 373.

Dr. Forehand did not explain why coal mine employment, as opposed to
cigarette smoking or cardiac issues, was the principal cause of the miner's abnormal
arterial blood gas study. JA at 373. Dr. Forehand also did not explain why the

miner's non-qualifying PFT was due solely to cigarette smoking. JA at 373. Finally, aside from Dr. Forehand's unsubstantiated statement that the miner's cardiac status "appears stable," Dr. Forehand neglected to discuss the relative contribution of the miner's extensive cardiac history to his overall health condition, or to discuss whether it would have any effect on the miner's arterial blood gas studies. JA at 373.

On October 20, 2009, at the request of the Petitioners, Dr. Kirk Hippensteel examined the miner and completed a corresponding medical report dated December 11, 2009. JA at 165. Dr. Hippensteel recorded a health, social, and work history similar to that of Dr. Forehand. JA at 165-170. Dr. Hippensteel agreed with Dr. Forehand that the miner's ventilatory impairment, measured by the pulmonary function studies, was not disabling in nature. JA at 170.

Regarding the abnormalities on the miner's arterial blood gas studies, Dr. Hippensteel stated as follows:

> This man's severe cardiac disease, associated with periodic congestive heart failure, severe left ventricle dysfunction and cardiac arrhythmia problems is the major cause for his gas exchange impairment and added to his need for oxygen referable to his obstructive sleep apnea with a reasonable degree of medical certainty. In other words, the evidence in this case shows that this man is not

13

> disabled from a pulmonary standpoint as claimed by Dr.
> Forehand either related to his ventilatory status or
> pulmonary related gas exchange status.   JA at 171.

After the miner's passing, Dr. Hippensteel completed a records review and submitted a supplemental report at the request of the Petitioners.  JA at 219.  In the supplemental report, Dr. Hippensteel reported again that any impairment suffered by the miner was the result of his worsening heart conditions and unrelated to coal mine dust exposure.   JA at 220-221.

On June 22, 2012, Dr. Hippensteel was deposed by counsel for the Petitioners.  JA at 22.  At deposition, Dr. Hippensteel explained that the miner's congestive heart failure affected the miner's pulmonary function test values because as fluid built up in the miner's heart, the miner's airways were narrowed causing obstructive abnormalities on the PFT tests.  Dr. Hippensteel also noted that the miner's obesity and obstructive sleep apnea, each extrinsic to the miner's lung condition, effected the miner's PFT values.   JA at 239-240.

Regarding the miner's arterial blood gas study results, Dr. Hippensteel explained that ABG tests are affected by cardiac function because the ABG is a combination test of the heart and lung function.  JA at 241.  Dr. Hippensteel explained as follows:

14

The arterial blood gases that were otherwise done show that he had good gas exchange when he was tested in 2003 and this was long after he left work in the mines. But as he developed increasing heart trouble, he had deterioration in this arterial blood gases. And, again, this can tie in with the congestion that he has in this lungs referable to his congestive heart failure. And I would also note that the results were variable showing that there wasn't a fixed component or deteriorating component that one would expect if it was related to his coal mine dust exposure or coal workers' pneumoconiosis. I would note that, although his DLCO/VA was only mild to moderately reduced, which shows, again, that there was not something that would be coming from emphysema as a legal pneumoconiosis cause that was significant or severe in this man because if that was the case, then the DLCO and DLCO/VA should be similarly decreased if emphysema is the reason for that decrease. If there is fluid congestion, it can decrease the DLCO and, as it did in this circumstance, partially the DLCO/VA just because the fluid is occupying alveolar space that would usually be used for diffusion but is not available because of that fluid congestion from his heart failure. So I think that, again, another factor that shows that this man's heart condition and heart impairment made for gas exchange impairment. And I would note that that is why, on Dr. Forehand's exam on May 6, 2009 where he did exercising, that his arterial oxygenation dropped with exercise tied in with his impaired heart performance in that case. JA at 243-244.

Dr. Hippensteel also noted that he performed an electrocardiogram on the miner which revealed an atrial fibrillation, which Dr. Hippensteel described as an

15

irregularity of the heart rhythm that decreases cardiac output.  JA at 245-246. The physician concluded that the miner would have been disabled from going back to his last coal mine employment due to his chronic congestive heart failure.  JA at 246-247.  Dr. Hippensteel also specifically opined that the claimant's low arterial blood gas values were the direct result of his chronic heart issues.  JA at 247.

Next, at the request of the Petitioners, Dr. Raphael Caffrey reviewed pathology slides from a 2011 biopsy of the miner and completed reports dated October 5, 2011 and April 24, 2012.  JA at 276, 288.  In conjunction with the April 24, 2012 report, Dr. Caffrey also reviewed voluminous medical records related to the miner from the time period of May 9, 1983 through the miner's death.  JA at 288.  While Dr. Caffrey opined that the miner did have simple pneumoconiosis, he also opined that pneumoconiosis did not contribute to the miner's disability or death.  JA at 291.  Dr. Caffrey noted as follows:

> The multiple medical problems from which Mr. Justus suffered were unrelated to coal mine employment.  It is definitely my opinion that the patient had "clinical pneumoconiosis" and not "legal pneumoconiosis".  His medical problems are major and caused him significant pulmonary disability and led to and caused his death in 2011 at age 69.  The physician lists on the death certificate the patient had end stage congestive heart failure.  The patient's COPD I believe was not a

16

> significant medical problem; it certainly was primarily due to the fact he smoked approximately one pack per day for 40 years, but the significant heart failure as Dr. Hippensteel pointed out, caused the patient significant medical problems.   JA at 291.

Finally, the Respondent submitted treatment notes from Dr. Krishnan dated January 24, 2007 and June 29, 2007.   JA at 112.   Dr. Krishnan noted the miner's numerous health problems, including shortness of breath, chest pain, wheezing, unproductive coughs, and pressure like pain in his head with abdominal pain and bloating.   JA at 112-113.   He also noted that the miner suffered from COPD, CWP, and chronic respiratory failure, as well as marked obesity with sleep apnea. JA at 112-113.   Dr. Krishnan noted that the miner used supplemental oxygen seven days a week 24 hours a day.   JA at 112-113.   Significantly, Dr. Krishnan refrained from opining whether the miner was totally disabled from a respiratory or pulmonary impairment.   Id.

In his March 27, 2013 Decision and Order granting subsequent claim, the ALJ first determined that the miner failed to establish the existence of complicated pneumoconiosis.   JA at 50-53.   However, the ALJ determined that the evidence established the existence of a totally disabling respiratory or pulmonary impairment, and, as the miner established over fifteen (15) years of coal mine employment, the

17

ALJ determined that the rebuttable presumption of total disability due to pneumoconiosis set forth in 20 C.F.R. §718.305 was applicable. JA at 58-60. After determining that the Petitioners failed to rebut the §718.305 presumption, the ALJ awarded benefits in the miner's claim. JA at 66. The ALJ further found that the Respondent was entitled to automatic benefits in the survivor's claim pursuant to § 1556(b) of the PPACA. Id.

In determining that the Respondent established the presence of a totally disabling respiratory impairment prior to the miner's death, the ALJ first determined that the pulmonary function study evidence and arterial blood gas study evidence failed to establish a totally disabling respiratory impairment. JA at 54-55. Nonetheless, the ALJ determined that Dr. Forehand's diagnosis of a totally disabling respiratory impairment, as supported by Dr. Krishnan's treatment notes, established the existence of a totally disabling respiratory impairment. JA at 58. The ALJ also determined that Dr. Caffrey's reports supported a finding of total disability. JA at 58. In doing so, the ALJ stated that Dr. Caffrey found COPD to be "a significant medical problem," when Dr. Caffrey actually specifically stated that the miner's COPD was not a significant medical problem. JA at 58, 291.

## V.    SUMMARY OF THE ARGUMENT

In order to receive benefits under the Federal Black Lung Benefits Act, a claimant must prove four elements: 1) the existence of pneumoconiosis, 2) that pneumoconiosis arose from the miner's past coal mine employment, 3) the existence of a totally disabling respiratory or pulmonary impairment, and 4)  that pneumoconiosis caused or contributing to the miner's disabling impairment. Jewell Smokeless Coal Corporation v. Street, 42 F.3rd 241 (4th Cir. 1994). Pursuant to 718.204(b)(2)(i)-(iv), claimant can prove the existence of a totally disabling respiratory or pulmonary impairment by any of the following methods: (1) pulmonary function test results meeting the standards in Appendix B of 20 C.F.R. § 718, (2) arterial blood gas study results meeting the standards in Appendix C of 20 C.F.R. § 718, (3) proof of pneumoconiosis and cor pulmonale with right sided congestive heart failure, or (4) proof of a disabling respiratory or pulmonary condition on the basis of the reasoned medical opinion of a physician relying upon medically accepted techniques.   Importantly, a claimant cannot establish the element of total disability if the miner would have been totally disabled "to the same degree and by the same time in his life had he never been a miner." Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1196 (4th Cir. 1995).  Pursuant to this Court's

19

holding in <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524 (4th Cir. 1998), the ALJ must consider any and all evidence of any existing non-pulmonary or non-respiratory impairments suffered by a miner, and determine whether the miner's respiratory or pulmonary impairment, standing alone, is disabling.

Here, the record contains substantial evidence of the miner's declining cardiac condition at the time of and in the years prior to his death. The Respondent specifically testified at hearing that the miner was forced to retire from the coal mines due to his cardiac illness. However, the ALJ failed to discuss the miner's significant cardiac issues in his discussion of whether claimant proved the existence of a totally disabling respiratory or pulmonary impairment. Likewise, Dr. Forehand failed to discuss the miner's cardiac ailments as they related to the miner's overall health in the medical opinion which the ALJ relied upon in finding that claimant proved the element of total disability, and the ALJ ignored that physician's omission of those issues. The Petitioner's contend that the ALJ's failure to consider the effect of the miner's severe cardiac condition as it related to the issue of total disability, and his ignoring of Dr. Forehand's failure to consider the same, amounts to error as a matter of law.

20

## VI.    ARGUMENT

### A.    STANDARD OF REVIEW

In black lung cases, this Court reviews decisions of the Benefits Review Board "to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 310 (4th Cir. 2012), *citing* Lewis Coal Co. v. Dir., O.W.C.P., 373 F.3d 570, 575 (4th Cir. 2004). The Court reviews the ALJ's and Board's legal conclusions *de novo*. Island Creek Coal Co. v. Compton, 211 F.3d 203, 208 (4th Cir. 2000). The Court must defer to the judgment of the ALJ regarding findings of fact where the ALJ's decision is supported by "substantial evidence." Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996), *citing* Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971).

"Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." Piney Mountain Coal Company v. Mays, 176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999), *quoting* NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939). In Allentown Mack Sales and Serv., Inc. v. NLRB,

the Supreme Court explained that the substantial evidence test requires a degree of evidence that could satisfy a reasonable fact-finder of a particular fact.  522 U.S. 359, 377, 118 S. Ct. 818 (1998).  Furthermore, this Court should address whether the ALJ and the Board have analyzed all relevant evidence and provided a sufficient explanation of the rationale used in determining whether a finding is supported by substantial evidence.  *See* Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997), *citing* Arnold v. Secretary, Health Education & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

## B.    DISCUSSION OF ISSUES

The Black Lung Benefits Act provides monthly benefits to miner's and surviving spouses of miner's who experience totally disability or death due to the disease of pneumoconiosis.   30 U.S.C. § 901(a).   In order to receive benefits under the Federal Black Lung Benefits Act, a claimant must prove that he has 1) pneumoconiosis, 2) arising out of the claimant's past coal mine employment, that has, 3) caused or contributed to, 4) a disabling respiratory impairment.   Jewell Smokeless Coal Corporation v. Street, 42 F.3rd 241 (4th Cir. 1994).   The claimant must prove all elements by a preponderance of the evidence.   Director, OWCP v. Greenwich Collieries, 512 U.S. 267 (1994).   A claimant's failure to prove any of these elements must result in a denial of the claim.   Anderson v. Valley Camp of Utah, Inc., 12 BLR 1-111 (1988).

Twenty C.F.R. § 718.204(b)(1) provides that a miner shall be considered totally disabled if the irrebuttable presumption set forth in § 718.304[3] applies.   If that presumption does not apply, then the criteria contained in subsections

---

3 20 C.F.R. § 718.304 affords an irrebuttable presumption of total disability due to pneumoconiosis to miner's who can prove the existence of the disease known as "complicated pneumoconiosis."   The ALJ's finding that the claimant failed to prove the existence of complicated pneumoconiosis in this case must be affirmed as unchallenged on appeal.

23

718.204(b)(2)(i)-(iv) shall establish total disability. Those criteria are: (1) pulmonary function test results meeting the standards in Appendix B of 20 C.F.R. § 718, (2) arterial blood gas study results meeting the standards in Appendix C of 20 C.F.R. § 718, (3) proof of pneumoconiosis and cor pulmonale with right sided congestive heart failure, or (4) proof of a disabling respiratory or pulmonary condition on the basis of the reasoned medical opinion of a physician relying upon medically accepted techniques. All evidence must be weighed as a whole to determine whether there is proof by the preponderance of the evidence that a miner is totally disabled. Lane v. Union Carbide Corp., 105 F.3d 166, 171 (4th Cir. 1997); Walker v. Director, Office of Workers' Compensation Programs, 927 F.2d 181, 184-85 (4th Cir. 1991). Where the evidence related to the issue of total disability is in conflict, "[t]he ALJ must assign the contrary evidence appropriate weight and determine whether it outweighs the evidence that supports a finding of total disability." Lane v. Union Carbide Corp., 105 F.3d 166, 171 (4th Cir. 1997). Importantly, § 718.204(b)(1) specifies that a miner is only disabled if a pulmonary or respiratory impairment, standing alone, prevents or prevented a miner from his or her usual coal mine work.

## 1.     THE ALJ ERRED AS A MATTER OF LAW BY FAILING TO CONSIDER THE EVIDENCE OF THE MINER'S SEVERE CARDIAC ILLNESS IN DETERMINING WHETHER THE CLAIMANT ESTABLISHED THAT THE MINER WAS TOTALLY DISABLED DUE TO A RESPIRATORY IMPAIRMENT PRIOR TO THIS DEATH.

Significantly, a miner must prove that his respiratory impairment is by itself totally disabling to establish entitlement under the Act, and the ALJ must consider any evidence of non-pulmonary or non-respiratory impairments in determining whether the miner has satisfied his burden of proof.   Hicks, 138 F.3d at 528. Likewise, in determining the amount of probative value to afford to the opinion of an opining physician, the ALJ must consider whether the physician distinguished the relative contributions of the miner's respiratory conditions and the miner's other ailments to his overall condition.   Id. at 534.   Importantly, a miner cannot establish the element of total disability if he would have been totally disabled "to the same degree and by the same time in his life had he never been a miner." Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1196 (4th Cir. 1995); see also Shelton v. Director, OWCP, 899 F.2d 690, 693 (7th Cir. 1990) (holding miner not entitled to benefits if he would have become disabled by reason of heavy smoking or other activity or condition).   In the case at hand, the Petitioners contend that the ALJ erred as a

matter of law by failing to consider the effect of the miner's severe cardiac condition as it related to the issue of total disability, and by ignoring Dr. Forehand's failure to consider the same ailments as they related to the miner's disability status.

In Hicks, this Court reversed an ALJ's finding of total disability due to a respiratory impairment where the ALJ failed to adequately consider the relative contributions of a miner's cardiac disease, coronary artery disease, obesity, and hypertension to the miner's overall health. Hicks at 534. The Court provided the following discussion regarding the ALJ's duty to consider such factors in determining whether a claimant has proven the element of total disability:

> Finally, the ALJ erred in merely giving lip service to the evidence of Hicks' other health problems. Specifically, the ALJ did not address Dr. Rasmussen's failure to provide a meaningful evaluation of [the claimant's] heart related ailments, a reason for which the ALJ had previously discredited Dr. Rasmussen's opinion in his first Order. The record in this case contained ample evidence that Hicks had numerous other health problems in addition to pneumoconiosis, including cardiac disease, coronary artery disease, obesity, and hypertension. The evidence showed that Hicks stopped working because of a heart attack and subsequent coronary artery bypass surgery in 1982. Dr. Zaldivar concluded that Hicks had no respiratory impairment and was disabled solely due to his cardiac condition. Dr. Fino attributed Hicks' disability to his obesity, and Dr. Sobieski determined

26

> Hicks was disabled because of his coronary artery disease.
>
> The ALJ failed to explain why he rejected all of this evidence of Hicks' other health problems…
>
> Therefore, on remand, the ALJ must determine whether Hicks suffers from a totally disabling condition that is entirely respiratory or pulmonary in nature and whether Hicks would have been totally disabled to the same degree because of his other health problems. In making this determination, the ALJ must consider all of the relevant evidence, addressing Dr. Zaldivar's and the other physicians' conclusions with respect to Hicks' non-pulmonary conditions. <u>Id.</u> at 534 – 535.

Similarly, in the case at hand, the ALJ "merely giving lip service to the evidence of [the miner's] other health problems" amounts to an error as a matter of law. The ALJ noted the miner's severe cardiac issues in the ALJ's summary of the facts (JA at 48) and in his review of the medical opinions in the records. JA at 56-58. Remarkably, however, the ALJ neglected entirely to provide any substantive discussion regarding how the miner's cardiac issues play into the question of whether the miner was totally disabled from a respiratory or pulmonary standpoint alone.

The similarities between the evidence related to the issue of total disability in <u>Hicks</u> and in the case at hand are striking. In <u>Hicks</u>, "the evidence showed that

27

[the claimant] stopped working because of a heart attack and subsequent coronary artery bypass surgery." Hicks at 534. Here, the Respondent specifically testified at hearing that the miner was taken out of work by Dr. Thakker "on account of his heart." JA at 60. In Hicks, Dr. Zaldivar determined that the miner did not have a respiratory impairment despite some qualifying arterial blood gas studies and that the miner was disabled solely due to his cardiac condition. Id. In the case at hand, Dr. Hippensteel explained that the miner's cardiac disease was causing gas exchange abnormalities and that any impairment in the miner's pulmonary function studies resulted from obstructive sleep apnea and narrow pharynx, causes that were extrinsic to the claimant's lungs. JA at 239-242, 247. Just as this Court determined that the miner's cardiac condition in the Hicks' case required some substantial discussion by the ALJ, the Petitioners contend that the present case with synonymous facts also requires some meaningful discussion by the ALJ regarding the miner's cardiac condition.

In addition to failing to provide any substantial discussion regarding the miner's cardiac condition, the ALJ also ignored Dr. Forehand's "failure to provide a meaningful evaluation of [the miner's] heart related ailments." *See* Hicks at 534. Although Dr. Forehand noted that the miner had undergone two bypass surgeries

28

and two defibrillator placements in the medical history section of his report, the physician essentially ignored those elements in discussing the miner's impairment. Under Section 8(a) of the Department of Labor medical exam form, which directs the examining physician to provide a medical assessment of the degree of the severity of the miner's impairment, Dr. Forehand stated as follows:

> A significant respiratory impairment is present. Insufficient residual oxygen transfer capacity remains for return to last coal mining job. Unable to work. Totally and permanently disabling.

Under Section 8(b) of the same form, which directs the physician to discuss the extent to which the miner's cardiopulmonary diagnoses contribute to the impairment, Dr. Forehand noted:

> Claimant's coal mine employment is the principal cause of abnormal arterial blood gas study. Cigarette smoking reduced vent study to 74% of predicted which is not disabling. Claimant's cardiac status appears stable.

Dr. Forehand failed to discuss why he believed the miner's cardiac status was stable when the miner was forced to quit work due to his cardiac issues and underwent a defibrillator placement nearly two (2) years prior to Dr. Forehand's exam. Remarkably, in discussing whether the miner was totally disabled from a respiratory impairment, the ALJ stated, "Dr. Forehand based his conclusions on

29

miner's coal mine employment, miner's cigarette smoking history, miner's coronary artery disease, and the results of his ABG and PFT."   JA at 56.   However, there is no indication in Dr. Forehand's report that he based his conclusion regarding the existence of a respiratory impairment in any way upon the miner's coronary artery disease.   Dr. Forehand's opinion regarding what kind of impairment the miner had is completely lacking in any discussion as to how the miner's cardiac disease did or did not affect the miner's impairment.   *See* Peabody Coal Co. v. Helms, 859 F.2d 486, 490 (7th Cir. 1988) (noting with approval physician's statement that "shortness of breath can be a symptom of heart disease and . . . [claimant's heart disease was not related to his coal mine employment]") *cited with approval by* Hicks.

The ALJ's willingness to ignore Dr. Forehand's failure to consider the miner's cardiac issues is especially troubling upon review of the ALJ's discussion of Dr. Hippensteel's opinion.   Regarding Dr. Hippensteel's opinion, the ALJ stated, "While it is clear that miner suffered from serious heart conditions, Dr. Hippensteel failed to explain why miner's respiratory conditions, including COPD, CWP, and interstitial lung disease did not prevent miner from returning to his last coal mine employment, which involved heavy manual labor."   JA at 57. However, in discussing Dr. Forehand's report, the ALJ ignored Dr. Forehand's

30

failure to explain why the miner's cardiac condition did not prevent the miner from returning to his last coal mine employment.  As noted by this Court in <u>Hicks</u>, "A claimant cannot establish eligibility for benefits if he would have been totally disabled 'to the same degree and by the same time in his life had he never been a miner.'"  <u>Hicks</u> at 534, quoting <u>Dehue Coal Co. v. Boward</u>, 65 F.3d 1189, 1196 (4th Cir. 1995).  The ALJ appears to have confused the burden of proof; it was not the employer's burden to prove why the miner's respiratory impairments did not prevent him from returning to his last coal mine employment, but the claimant's burden to prove that the miner's respiratory or pulmonary impairment alone would prevent him from returning to the mines.

In sum, the ALJ erred as a matter of law by merely paying lip service to the miner's cardiac conditions and by failing to address Dr. Forehand's failure to provide a meaningful evaluation of the relative contributions of the miner's heart related ailments and respiratory problems to his overall health.  Rather than requiring the Respondent to prove that the miner suffered from a respiratory or pulmonary disability that, standing alone, would prevent him from returning to the coal mines, the ALJ disregarded the miner's severe cardiac issues and Dr. Forehand's failure to discuss the same.  As the ALJ's finding of a totally disabling

31

respiratory impairment was based primarily upon Dr. Forehand's medical opinion, this Court must reverse or vacate the ALJ's finding in that regard with instructions on remand to consider all evidence relevant to the issue of total disability from a respiratory or pulmonary impairment.   Likewise, as both the living miner's and survivor's claims are dependent upon the ALJ's finding of a total disabling respiratory impairment, both awards must be vacated.

## 2. THE ALJ'S FINDING THAT THE CLAIMANT ESTABLISHED A TOTTALY DISABLING RESPIRATORY IMPAIRMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Again, this Court must determine whether "substantial evidence" supports the ALJ's factual findings. Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996), *citing* Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971). "Substantial evidence is more than a mere scintilla, and must do more than create a suspicion of the existence of the fact to be established." Piney Mountain Coal Company v. Mays, 176 F.3d 753; 1999 U.S. App. Lexis 8487 (4th Cir. 1999), *quoting* NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 83 L. Ed. 660, 59 S. Ct. 501 (1939). In Allentown Mack Sales and Serv., Inc. v. NLRB, the Supreme Court explained that the substantial evidence test requires a degree of evidence that could satisfy a reasonable fact-finder of a particular fact. 522 U.S. 359, 377, 118 S. Ct. 818 (1998). Furthermore, this Court should address whether the ALJ and the Board have analyzed all relevant evidence and provided a sufficient explanation of the rationale used in determining whether a finding is supported by substantial evidence. *See* Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438,

33

439 (4th Cir. 1997), *citing* Arnold v. Secretary, Health Education & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

Here, for numerous reasons, substantial evidence does not support the ALJ's finding that the Respondent established a disabling impairment pursuant to § 718.204(b)(2)(iv). First, the ALJ relied upon the medical opinion of Dr. Forehand, who failed to provide adequate reasoning to support his conclusion that the miner was totally disabled from performing his usual coal mine employment and who failed to distinguish the relative contributions of the diagnosed respiratory conditions and the miner's severe cardiac issues to his overall condition. Further, the ALJ determined that the treatment notes from Dr. Krishnan supported a finding of total disability when that physician did not provide a diagnosis of total disability and did provide any reasoning to support such a diagnosis. The ALJ also mischaracterized the pathology report of Dr. Caffrey, stating that Dr. Caffrey described the miner's COPD as a "significant medical problem" when the physician actually stated that the miner's COPD was *not* a significant medical problem. The Petitioners contend that the aforementioned errors require this Court to reverse or vacate the ALJ's finding that the miner had a totally disabling impairment and the remand the claim to the ALJ for further consideration.

34

Also, the Petitioners note that the ALJ's findings that the miner's pulmonary function test results and arterial blood gas study results failed to establish a totally disabling respiratory impairment, as well as the ALJ's finding that no evidence of cor pulmonale with right-sided congestive heart failure was submitted in this claim, must be affirmed as unchallenged on appeal.   JA at 53-55.

### a. The medical report of Dr. Forehand is not well-reasoned or well-documented and, therefore, does not support the ALJ's finding of a totally disabling respiratory impairment.

As noted above, §718.204(b)(2)(iv) provides that a finding of total disability can be based upon an opinion from "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques."   "In weighing opinions, the ALJ is called upon to consider their quality," taking into account, among other things, "the opinions reasoning" and detail of analysis." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 533 (4th Cir. 1998), *citing* Underwood v. Elkay Mining, Inc, 105 F.3d 946, 951 (4th Cir. 1997). Here, Dr. Forehand failed to provide adequate reasoning for his diagnosis of disability and, therefore, the ALJ erred in basing his finding of disability upon the physician's report.

Initially, the Petitioners note that Dr. Forehand's diagnosis of total disability is simply not "reasoned" because the physician provided no reasoning or analysis. The physician's entire discussion regarding the degree of the miner's disability is as follows:

> A significant respiratory impairment is present.  Insufficient residual oxygen-transfer capacity remains to return to last coal mining job. Totally and permanently disabling.

The first and last sentences of the of the physician's brief discussion are merely conclusory statements that omit any analysis or support.  The second sentence of the above paragraph is the only glimpse Dr. Forehand provided as to why he may have decided that the miner was disabled.  And, although the physician states that the miner could not return to work in the coal mines due to his oxygen-transfer capacity in the second sentence, the ALJ had previously determined that the arterial blood gas evidence did not support a finding of total disability.

Again, the ALJ found that "all the [pulmonary function] studies produced values that were not qualifying for disability under the standards set forth in the regulation."  JA at 54.  Further, Dr. Forehand conceded on page 4 of his report that the miner's PFT values were not disabling.  JA at 373.  The ALJ further found that the arterial blood gas study evidence failed to establish that the miner

36

was totally disabled.  JA at 54-55.  However, Dr. Forehand cited insufficient oxygen-transfer as the sole reason for his diagnosis of total disability.  Essentially, the ALJ made a finding that the arterial blood gas study evidence failed to establish disability, and then made a finding of total disability based upon Dr. Forehand's statement that the arterial blood gas study evidence established disability. Accordingly, the ALJ erred by determining that the PFT and ABG evidence failed to establish disability, then going on to credit Dr. Forehand's diagnosis of disability which was based entirely on the ABG evidence.

Next, as discussed in section "I" of this brief, Dr. Forehand failed to explain what, if any, affect the miner's heart condition played in his ability to return to work in the mines.  While Dr. Forehand recorded that claimant had bypass surgery in 1983 and 1992, and that he underwent defibrillator placement in 2001 and 2007, he neglected to discuss why he believes that the miner's impairments resulted from respiratory as opposed to the documented cardiac issues.  In Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 491 (4th Cir.), this Court affirmed an ALJ's finding that a miner had a totally disabling heart disease, but not a totally disabling respiratory impairment, where a physician found the miner's arterial blood gas study results "consistent with heart disease."  While the Petitioner's physicians

37

reasoned that this miner's arterial blood gas values were the result of his documented cardiac problems, Dr. Forehand failed to discuss what role, if any, the miner's cardiac issues had in relation to the arterial blood gas test results. The Petitioners again note that the claimant bears the burden of proving any impairment is in fact due to respiratory of pulmonary disease, and that a medical opinion cannot be reasoned where the opining physician fails to provide a substantial discussion of other severe non-pulmonary or non-respiratory ailments suffered by the miner.

In sum, the ALJ based his finding of a totally disabling respiratory impairment primarily upon the undocumented and unreasoned report of Dr. Forehand. Dr. Forehand based his finding of total disability entirely upon the results of one arterial blood gas study, and the ALJ made the contrary finding that the arterial blood gas study did not establish disability. Further, Dr. Forehand's opinion should not have been afforded probative value because it failed to distinguish the relative contributions of the diagnosed respiratory conditions and miner's cardiac conditions to his overall condition. As substantial evidence does not support the ALJ's finding that Dr. Forehand's opinion was well-reasoned, and as the ALJ based his finding of a totally disabling respiratory impairment primarily upon Dr. Forehand's opinion, the ALJ's finding of total disability is not supported by substantial

evidence.

### b. The ALJ erred in finding that Dr. Caffrey's autopsy report supported a finding of a totally disabling respiratory impairment.

An ALJ may not independently review and interpret medical evidence and substitute his own judgment for that of a physician. *See, e.g.*, Gober v. Matthews, 574 F.2d 772 (3rd Cir. 1978); Schaaf v. Matthews, 574 F.2d 157 (3rd Cir. 1978). Although the ALJ conceded that Dr. Caffrey did not opine as to claimant's level of disability in his pathology report, the ALJ concluded that the physician's finding of a "significant pulmonary disability" supported Dr. Forehand's diagnosis of a totally disabling respiratory impairment. JA at 48. While the physician did note a significant pulmonary disability stemming from the miner's congestive heart failure, such does not amount to a finding of total disability as defined by the Act. The Act provides a precise definition of total disability as it relates to entitlement: the miner must suffer from a pulmonary or respiratory impairment that prevented him from performing his usual coal mine work and from engaging in comparable gainful employment. 20 C.F.R. § 718.204(b)(1). The ALJ's decision to interpret Dr. Caffrey's notation of a "significant pulmonary impairment" as supportive of a diagnosis of a totally disabling respiratory impairment amounts to an independent

review of medical evidence by the ALJ.  Dr. Caffrey clearly believed that the miner had a degree of pulmonary impairment, but refrained from discussing whether that impairment reached the level of total disability as defined by the Act. In fact, it appears from Dr. Caffrey's statement that the miner's COPD "was not a significant medical problem" that the physician believed that any pulmonary impairment suffered by the miner was not disabling.   The ALJ exceeded his role as fact finder by independently interpreting the medical data from Dr. Caffrey's opinion to support his own finding of total disability due to a respiratory impairment

Moreover, the ALJ plainly misrepresented the language from Dr. Caffrey's report.  In his discussion regarding the existence of a totally disabling respiratory impairment, the ALJ stated that Dr. Caffrey described the miner's COPD as a "significant medical problem."  JA at 48.  Remarkably, the doctor stated the exact opposite.  On page for of his April 24, 2012 report, Dr. Caffrey stated, "The patient's COPD I believe was *not* a significant medical problem…"  JA at 291. As Dr. Caffrey's entire opinion is premised on his conclusion that the miner's impairments were the result of his cardiac history and that the miner's COPD and CWP were not impairing, the ALJ's misstatement regarding the report severely

40

undermines his evaluation of the physician's opinion.

While the Benefits Review Board deemed the ALJ's misstatement regarding Dr. Caffrey's report as harmless error, the Petitioners contend that his mistaken belief regarding the physician's opinion was particularly damning to its case. The claimant must prove total disability due to a respiratory or pulmonary impairment by a preponderance of the evidence to establish entitlement. In defense of this element, the Petitioners relied upon Dr. Hippensteel's finding that the miner was not disabled from a respiratory standpoint and Dr. Caffrey's opinion that the miner's COPD was not a significant medical problem. However, the ALJ changed the wording of Dr. Caffrey's report, and in turn used it to support the claimant's position and to "undercut" Dr. Hippensteel's position.

### c. The ALJ erred in determining that Dr. Krishnan's treatment notes supported a finding of total disability.

Finally, the ALJ erred by determining that the medical records from Dr. Krishnan, who did not comment as to whether the miner was totally disabled, supported the medical opinion of Dr. Forehand. In determining that Dr. Forehand's opinion regarding pneumoconiosis was credible, the ALJ stated that it was "further supported by Dr. Krishnan's notes that Miner suffered from COPD with CWP and chronic respiratory failure, requiring oxygen seven days a week 24

41

hours a day." JA at 48. In his discussion of Dr. Krishnan's medical records, while the ALJ noted that the physician abstained from commenting on total disability, he reasoned that the doctor's "diagnoses and description of Miner's continuous use of oxygen further support Dr. Forehand's conclusion…" JA at 48. The employer contends that the ALJ mischaracterized Dr. Krishnan's treatment notes and that he erred in determining that the records were supportive of Dr. Forehand's opinion.

First, it is unclear from the two treatment notes in the record from Dr. Krishnan whether the physician actually diagnosed the miner with CWP, COPD, and chronic respiratory failure, or whether Dr. Krishnan was simply relating the miner's medical history. JA at 112. In the January 24, 2007 note, Dr. Krishnan noted that the miner first appeared in his office on November 6, 2006, at the referral of Dr. Agarwal. Dr. Krishnan stated that "[a]fter reviewing the symptoms it was decided to admit the patient to St. Luke's Hospital for further evaluation and treatment." As such, it does not appear the Dr. Krishnan examined the miner on November 6, 2006, but that he admitted him to the hospital immediately upon review of his symptoms.

42

Then, Dr. Krishnan stated that the miner returned to his office on December 21, 2006. The physician goes on to state, "He suffers from COPD, CWP, and chronic respiratory failure. He has marked obesity with sleep apnea. He has a C-Pap at home. In addition, he suffers from CAD with CHF and ischemic cardiomyopathy." JA at 112. Dr. Krishnan does not make clear whether the diagnoses were his medical conclusions or whether he was simply relating the findings of the medical professionals from St. Luke's. In any event, Dr. Krishnan does not provide any basis for the aforementioned diagnosis. The only testing referenced by Dr. Krishnan is the miner's blood pressure, and the doctor does not relate the miner's blood pressure to any respiratory or pulmonary impairment.

Lastly, in the June 29, 2007 note from Dr. Krishnan, the physician simply states that the miner "is known to have severe COPD with CWP and chronic respiratory failure, oxygen dependent. He has obstructive sleep apnea syndrome and is using the CPAP machine every night. He uses his supplemental oxygen 7 days a week 24 hours a day." JA at 112. Again, the physician appears to be simply relating findings of previous medical professionals regarding the miner. He provides absolutely no reasoning as to how the diagnosis of respiratory failure was arrived at. Importantly, although the ALJ implies that Dr. Krishnan stated the

43

miner needs continuous oxygen, the physician simply noted that the miner does use oxygen 24 hours a day, seven days a week. Neither of the treatment notes from Dr. Krishnan prescribed the use of oxygen or attested to the need of the oxygen. Rather, it is apparent from a reading of the notes that the doctor was only recording the miner's use of supplemental oxygen.

In sum, the ALJ erred as a matter of law by relying on the brief, conclusory treatment notes from Dr. Krishnan in determining that the miner was totally disabled from a respiratory or pulmonary impairment. As noted by the ALJ, Dr. Krishnan provided no diagnosis of total disability. Moreover, the records contain no basis for any of the listed diagnoses. The employer contends that the ALJ's decision to afford probative weight to Dr. Krishnan's records is particularly preposterous in light of his decision to afford no weight to Dr. Hippensteel's extensive, documented opinion because it was allegedly conclusory. Accordingly, the claim must be remanded for the ALJ's further consideration of the medical report evidence as it relates to the issue of total disability.

## VII.   CONCLUSION

WHEREFORE, for the above-mentioned reasons, Petitioners respectfully request that the award of black lung benefits to the miner and the respondent in the ALJ's March 27, 2013 Decision and Order be vacated and remanded for full and accurate consideration of all medical evidence in the record.   The ALJ erred as a matter of law by failing to consider the miner's non-pulmonary cardiac illness in determining whether the claimant established that the miner suffered from a totally disabling respiratory or pulmonary impairment.   Furthermore, substantial evidence does not support the ALJ's finding of a totally disabling respiratory or pulmonary impairment.   As such, his award of benefits must be vacated.


Respectfully submitted,

RIFE AND HALL COAL CO. &
LIBERTY MUTUAL INSURANCE
COMPANY

By Counsel

45

PENN, STUART & ESKRIDGE
P. O. Box 2009
Bristol, VA 24203
Phone: 423-793-4803
Fax: 423-793-4843
jsigmond@pennstuart.com

By:   /s/ John Sigmond
        John R. Sigmond, Esq.
        Va. State Bar # 68658

# VIII.  CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

No. 12-1688          Caption:<u>Liberty Mutual Insurance Co. v. DOWCP</u>

1.     This brief collies with the type-volume limitation of Federal Rule of
       Appellate Procedure 32(a)(7)(B) because:

       This brief contains **<u>8,987</u>** words, excluding the parts of the brief
       exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
       32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
       because:

       This brief has been prepared in a proportionally spaced typeface
       using Microsoft Word 2007 Version in Times New Roman 14
       point font.

<u>/s/ John Sigmond</u>
JOHN R. SIGMOND
Dated: September 10, 2014

## CERTIFICATE OF SERVICE

I, John R. Sigmond, do herby certify that I served Brief of Petitioners upon

the following by electronic delivery this 10th day of September 2014.

ELECTRONIC AND
REGULAR MAIL:

Patricia S. Connor
Clerk of Court
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 E. Main St., Suite 501
Richmond, VA 23219-3517

Joseph E. Wolfe
Wolfe, Williams, Rutherford & Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA 24273
jwolfe@wwrrlawfirm.com

Richard A. Seid
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W. Suite N-2119
Washington, D.C. 20210
blls-sol.gov

/s/ John Sigmond
JOHN R. SIGMOND
*Counsel for Liberty Mutual Insurance Co.*

48